Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3662 | **DATE** | 11/14/2000 |
| **CASE TITLE** | Eva Freud Witz, et al vs. W. Alfred Apps, et al | | |

JS-6

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to compel arbitration (7-1) is granted in part and denied in part, and defendants' motion to dismiss (7-2,10-1) is granted without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | NOV 15 2000 date docketed | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | 15 docketing deputy initials | 12 |
| ✓ | Mail AO 450 form. | FD-7 FILED FOR DOCKETING 00 NOV 14 PM 3:50 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
NOV 14 2000
Judge Harry D. Leinenweber
U.S. District Court

EVA FREUD WITZ and 3 ZERO
SOLUTIONS, INC.,

        Plaintiff,

v.

W. ALFRED APPS, MARK D.
TUCKER, REALASOFT ACQUISITION
CORP., QUORUM INVESTMENT
HOLDINGS, INC., NEWSTAR
SOLUTIONS (U.S.A.), INC., AND
REALPULSE.COM, INC.,

        Defendants.

Case No. 00 C 3662

Judge Harry D. Leinenweber

DOCKETED
NOV 15 2000

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Eva Freud Witz ("Witz") and 3 Zero Solutions, Inc., brought this action against Defendants, W. Alfred Apps, Mark D. Tucker, Realasoft Acquisition Corp. ("RAC"), Quorum Investment Holdings, Inc. ("QIHI"), Newstar Solutions (U.S.A.), Inc. ("Newstar"), and Realpulse.com, Inc. ("Realpulse"), alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, breach of contract, fraud, promissory estoppel, violation of the Illinois Wage Payment and Collection Act, defamation, and conversion. Before the Court is Defendants' motion to compel arbitration of most of Witz's claims and to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to FED. R. CIV. PRO. 12(b)(1).



## BACKGROUND

Witz entered into an Employment Agreement (the "Agreement") with RAC and QIHI as of March 17, 1999. (See Exhibit B to Complaint). Newstar and Realpulse later assumed the obligations under the Agreement. The Agreement contains a section titled "ARBITRATION" and the introductory paragraph states that "[e]xcept for any matters for which this Agreement expressly provides otherwise, any matter in dispute under or relating to this Agreement shall . . . be finally resolved in binding arbitration." (Agreement, ¶ 17). After explaining the informal dispute resolution procedures that should precede arbitration, the Agreement states the following:

> [T]he parties agree to submit any dispute over whether either party has violated the terms of this Agreement concerning the terms of the Executive's employment and the Executive's termination or resignation, including but not limited to any claim that the termination was not for cause . . . to private binding arbitration before the American Arbitration Association (AAA), in Chicago, Illinois, for determination in accordance with its National Rules for the Resolution of Employment Disputes. The parties understand that they are hereby waiving the right to trial by Jury.

(Agreement, ¶ 17(b)). The Agreement further defines the term "dispute":

> The parties further specifically agree that the term 'dispute' includes, but is not limited to, any claim that a termination of employment by the Company was not for cause, or that the executive was constructively terminated, for the reason that the Company has violated any federal, state or local statute or law prohibiting discrimination in employment or otherwise regulating the

employment relationship and providing for remedies in the
event of any violation of such statute or law.

(Agreement, ¶ 17(c)). The Agreement also explains how the parties will handle the costs of the arbitration:

> . . . with respect to certain costs of the arbitration, the arbitrator's authority will be coextensive with the authority of a Judge in a court of competent jurisdiction sitting without a jury and such arbitrator may impose any remedy which would be available to the parties in such court proceeding. The arbitrator shall in addition, have the authority to award the prevailing party in any arbitration . . . reimbursement for reasonable attorneys' fees incurred.. . . The expense of the arbitrator and the court reporter and related facilities shall be borne one half by the Executive and one half by either the Company or the Guarantor.

(Agreement, ¶¶ 17 (f) and (g)). Last, the Agreement states that arbitration "shall be the exclusive means of resolving any dispute between the parties over the interpretation of this Agreement and/or either party's compliance with the terms thereof." (Agreement, ¶ 17(h)). Defendants argue that Witz has failed to comply with the arbitration clauses in the Agreement and instead filed this lawsuit.

## **DISCUSSION**

### **ENFORCEABILITY OF THE ARBITRATION PROVISION**

Plaintiffs bear the burden of establishing that the arbitration clause is unenforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). To determine whether a valid arbitration agreement exists between the parties, courts look to the state law that ordinarily governs the formation of

contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The Agreement is governed by Illinois law. (Agreement, ¶ 25).

First, Witz argues that the requirement in the Agreement that the expenses of the arbitration, including the arbitrators, court reporter and related facilities, be split between the parties creates a "financial hurdle to [her] vindication of her civil rights" in violation of Title VII's fee-shifting principles. (Witz's Resp., at 3).

The Court disagrees. In *McCaskill v. SCI Management Corporation*, No. 00 C 1543, 2000 WL 875396 (N.D. Ill. June 22, 2000), the court addressed an almost identical argument and held that the arbitration clause was enforceable. The court explained that the plaintiff had not demonstrated that paying the costs would be prohibitively expensive for her. *Id.* at *4. The express incorporation of the AAA rules strengthened the argument for enforceability because the rules contain safeguards that protect plaintiffs from inordinately high costs and allow arbitrators to reduce fees in cases of extreme hardship. *Id., citing*, AAA National Rules for the Resolution of Employment Disputes ("AAA Rules"), Rule 38, 1998 WL 1527109, at *14. The court further stated that even if the plaintiff had to pay one-half of the arbitration costs, "this alone does not make the agreement unenforceable" because courts have enforced arbitration agreements

requiring the parties to split the costs. *Id.* at *4, *citing,* *Kovaleskie v. SBC Capital Markets, Inc.*, 167 F.3d (7th Cir. 1999). Last, in the event that an arbitrator exceeds the bounds regarding the fees, the issue may be presented to a reviewing court. (AAA Rules 34(d), 38, 39).

As another district court has noted, "Congress did not authorize courts to evaluate plaintiffs' arbitration costs on a case-by-case basis when determining whether to compel arbitration. 'Whatever may be said pro and con about the cost and efficiency of arbitration . . . is for Congress and the contracting parties to consider.' *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 807 (N.D. Ill. 1999), citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1151 (1997).

The court finds the reasoning in *McCaskill* sound, and the Court is not persuaded by Witz's arguments to the contrary. Witz cannot escape her contractual obligation to arbitrate by now complaining about the cost. Further, Witz overstates the holding in *Kovaleskie*. Witz argues that the court in *Kovaleskie* based its holding on the fact that it was a securities case where employers usually pay arbitrator's fees, and thus the holding is limited to securities cases. (See Witz's Resp., at 3). The Court does not read *Kovaleskie* so narrowly, and neither did several other courts. See, e.g., *McCaskill*, 2000 WL 875396, at *3-4 (Title VII and 42 U.S.C. § 1981 case); *In re Realnetworks, Inc. Privacy* Litigation,

No. 00 C 1366, 2000 WL 631341, at *7 (N.D. Ill. May 8, 2000)(trespass to property and privacy case); *Brown v. Surety Finance Serv.*, No. 99 C 2405, 2000 WL 528631, at *3-4 (N.D. Ill. March 24, 2000) (Truth in Lending Act case).

Witz further argues that the arbitration provisions in the Agreement are unenforceable because she has to take the risk of paying Defendants' attorneys fees if she does not prevail in contravention of Title VII's fee-shifting provisions. Paragraph 17(f) of the Agreement does give the arbitrator the authority to award the prevailing party attorney's fees. The Agreement does not, however, limit Witz's rights to collect fees. While other circuits have held arbitration agreements unenforceable where the agreement required forfeiture of statutory rights, *see, e.g., Paladino v. Avnet Computer Technologies*, 134 F.3d 1054, 1060 (11th Cir.1998)(agreement that limited Title VII plaintiff to breach of contract damages only was unenforceable), that is not the case here. Here, the arbitrator will fashion an appropriate remedy and may award relief "that would have been available to the parties had the matter been heard in court . . . in accordance with applicable law." (AAA Rules 34(d) and (e)). Witz, of course, has the opportunity to present the issue to a reviewing court to ensure that the arbitrator complied with Title VII. (AAA Rules 34(d), 38, 39).

Last, Witz's argues that the notice and demand provisions in the Agreement render it unenforceable because they deprive her of time to pursue her Title VII claims. While statutory claims may be the subject of an enforceable arbitration agreement, by agreeing to arbitrate a statutory claim a party does not, however, forgo the substantive rights afforded by the statute. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), *citing*, *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614 (1985). The party has only agreed to submit the resolution of the substantive rights to an arbitral, rather than judicial forum. *Id.* Statutes of limitations, however, are generally considered procedural provisions, not substantive provisions. *See Banas v. American Airlines*, 969 F.2d 477, 485 (7th Cir. 1992). Further, to the extent that Witz's argument involves the interpretation of provisions in the Agreement, it falls within the exclusive realm of the arbitrator. *See* Agreement, ¶ 17(h), AAA Rules, 4(b) ("Any disputes over such issues shall be referred to the arbitrator.") Also, To the extent that the arbitrator's decision does not comply with the law, Witz may seek judicial review.

## SCOPE OF THE ARBITRATION PROVISION

### Witz's Title VII Claim

Witz divides her Title VII claim into five parts: (1) that Newstar and/or Realpulse denied her a promotion in favor of a less qualified male; (2) that Newstar and Realpulse imposed upon her a

material diminution of her authority and responsibilities; (3) that Realpulse denied her compensation that was given to similarly situation male employees; (4) that Realpulse terminated her because of her sex; and (5) that Realpulse discriminated against her by the manner in which it treated her during and after her termination. Witz argues that only one of them, that she was terminated because of her sex, is subject to arbitration pursuant to the Agreement. The Court finds Witz's unduly narrow interpretation of the Agreement untenable and contradictory to the well-established precedent of liberal interpretation of arbitration provisions. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Witz first argues that while the preamble to paragraph 17 states that "any matter in dispute under or relating to this agreement shall . . . be finally resolved by binding arbitration," later sections of the Agreement narrow the scope of arbitrable disputes. (Witz's Resp., at 8). Witz asserts that paragraph 17(b) narrows the scope and precludes all of her Title VII claims save one. Paragraph 17(b) states:

> [T]he parties agree to submit any dispute over whether either party has violated the terms of this Agreement concerning the terms of the Executive's employment and the Executive's termination or resignation, including but not limited to any claim that the termination was not for cause under section 12, to private, binding arbitration.

(Agreement, ¶ 17(b)). Witz argues that the use of the word "and" in the above section indicates that the parties did not intend to arbitrate just any dispute over whether the Agreement had been violated, but instead "only those disputes that concerned [Witz's] termination or resignation." (Witz's Resp., at 8). Witz further argues that if the parties intended to arbitrate suits not related to termination, they would have used the word "or" instead of the word "and."

The Court finds this interpretation of the language unreasonable. This language requires the parties to submit to arbitration both disputes concerning the Executive's employment *and* disputes regarding the Executive's termination or resignation. Construing this language to specifically require that the dispute involve both the terms of the Executive's employment and the Executive's termination or resignation is nonsensical. It cannot be said that this clause is not susceptible to an interpretation that covers all of the Witz's Title VII claims, and "any doubt concerning the scope of arbitrable issues should be resolved in favor of coverage." *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 54 (7th Cir. 1995).

In addition, Witz argues that paragraph 17(c) further demonstrates that the Agreement does not cover disputes over any acts of discrimination that did not involve a termination. Paragraph 17(c) defines "disputes" as "includ[ing], but not limited

to, any claim that a termination of employment by the Company was not for cause, or that the executive was constructively termination, for the reason that the Company violated any federal . . . law prohibiting discrimination." (Agreement, ¶ 17(c)). Witz neglects to even consider the phrase "including, but not limited to." This language necessarily includes other disputes not specifically listed, and, contrary to what Witz argues, "dispute" is specifically *not* limited to terminations by this very language. There is no other reasonable interpretation. Therefore, all of Witz's Title VII claims are covered by the arbitration provisions.

### Witz's Non-Title VII Claims

Defendants further move to compel arbitration of most of Witz's other claims because the claims "relate to" the terms and obligations of the parties under the Agreement. Witz alleges the following additional claims: breach of contract (the Agreement) against RAC, Newstar and Realpulse (Count II); fraud against Apps acting on behalf of QIHI and RAC (Count IV); promissory estoppel against Apps, QIHI, RAC, Newstar and Realpulse (Count V); defamation against Tucker and Realpulse (Count VI); violation of the Illinois Wage Payment and Collection Act against Newstar, Realpulse, Apps, and Tucker (Count VII); and conversion against Realpulse (Count VIII).

As stated in the Agreement, "any matter in dispute under or relating to th[e] Agreement" is subject to arbitration. (Agreement, ¶ 17). It is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24-25 (1983). The Court cannot deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation Co.,* 353 U.S. 574, 582-83 (1960). Broad arbitration clauses "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 910 (7th Cir. 1999)(arbitration clause covering claims "arising out of or relating to" the agreements between the parties was an extremely broad provision capable of an expansive reach.) The "touchstone of arbitrability" is the "relationship of the claim to the subject matter of the arbitration clause." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l., Ltd.,* 1 F.3d 639, 643 (7th Cir. 1993).

Witz's breach of contract claim regarding the Agreement against RAC, Newstar, and Realpulse (Count II) and claim for violation of the Illinois Wage Payment and Collection Act against Newstar and Realpulse (Count VII) are clearly subject to arbitration, and Witz makes no arguments to the contrary.

Witz argues that Apps and Tucker cannot be compelled to arbitrate because they are not parties to the Agreement. Arbitration clauses are contractual agreements that bind only those who agree to submit their disputes to arbitration. *AT&T Tech. v. Communications Workers of America,* 475 U.S. 643 (1986). Thus, "there must be a contractual basis to draw all parties involved in the dispute into arbitration." *Laborers' Int'l. Union of North America, Local Union No. 309 AFL-CIO v. W. W. Bennett Construction Co.,* 686 F.2d 1267, 1274 (7th Cir. 1982).

In the instant case, the parties to the Agreement are RAC, QIHI, and Witz. Apps and Tucker, however, were not parties to the Agreement, and the Defendants make no argument to the contrary. Therefore, the Court cannot compel Apps and Tucker to arbitrate the disputes against them, which include the fraud and promissory estoppel claims against Apps, the Illinois Wage Payment and Collection Act claims against Apps and Tucker, and the defamation claim against Tucker. *See Laborers' Int'l.,* 686 F.2d at 1274.

The following claims do involve parties to the Agreement: fraud against QIHI and RAC; promissory estoppel against QIHI, RAC, Newstar and Realpulse; defamation against Realpulse; and conversion against Realpulse.

In Witz's fraud and promissory estoppel claims she alleges that Apps, on behalf of RAC and QIHI, made material misrepresentations and clear and unambiguous promises to her to

induce her to sell her business to RAC and to enter into the Asset Purchase Agreement. Witz argues that her claims would exist even if the Agreement did not exist and that the Asset Purchase Agreement is a separate and distinct contract from the Agreement that contains the arbitration clause. While this may be true, it does not change the fact that Witz's fraud and promissory estoppel allegations "relate to" the Agreement. In the Amended Complaint, many of the same allegations support both the breach of the Agreement and the fraud and promissory estoppel claims, and the other allegations relate to the terms of her employment. Many of the alleged misrepresentations and promises involved statements made to induce her to remain employed by RAC after the sale and involve the terms of Witz's compensation, which are contained in the Agreement. (See Compl., at ¶¶ 22, 158, 161-63, 166-68). Thus, the fraud and promissory estoppel claims against RAC and QIHI are subject to arbitration.

Witz argues that her defamation and conversion claims also do not "relate to" the Agreement because they involve statements and actions that occurred after Witz was terminated. Witz alleges that Realpulse defamed her by publishing false and defamatory statements about her job performance. In her conversion claim, Witz alleges that Realpulse wrongfully converted her personal property by refusing to return it to her after she was terminated. To have "their genesis in the Agreement" claims may arise after the

termination of the contract, and they need not raise issues of contract validity, interpretation, or performance. *Sweet Dreams Unlimited*, 1 F.3d at 643. Instead, it is sufficient that the claims "relate[] to the subject matter of the arbitration clause." *Id*. Therefore, because these claims relate to the subject matter of the broad arbitration clause, the defamation and conversion claims are also subject to arbitration.

Furthermore, the Court grants Defendants' motion to dismiss all of the claims that are subject to arbitration. *See, e.g., Bauer v. Morton's of* Chicago, No. 99 C 5996, 2000 WL 149287 (N.D. Ill. Feb. 9, 2000) (granting motion to compel and dismissing complaint); Lopez *v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 97 C 3407, 1997 WL 674965, at *2 (N.D. Ill. Oct. 28, 1997)(same); *Stromberg v. Howe Barnes Investments, Inc.*, No. 95 C. 1675, 1995 WL 368905, at *2 (N.D. Ill. June 19, 1995)(same).

Regarding the remaining claims in the Complaint, including any claims by Plaintiff 3 Zero Solutions, Inc., that are not subject to arbitration, the Court notes that subject-matter jurisdiction in the case is based on the Title VII claim. The Court declines to exercise supplemental jurisdiction over those claims, *see* 28 U.S.C. § 1367(c)(3), and dismisses all of the non-arbitrable claims for lack of subject-matter jurisdiction. FED. R. CIV. PRO. 12(b)(1).

## CONCLUSION

Therefore, for the foregoing reasons:

1. Defendants' Motion to Compel Arbitration is GRANTED-IN-PART and DENIED-IN-PART, and Defendants' Motion to Dismiss is GRANTED without prejudice.

2. Defendants' Motion to Compel Arbitration is GRANTED regarding:

   a. Witz's Title VII claim (Count I);
   b. Breach of contract regarding the Employment Agreement (Count II);
   c. Fraud against QIHI and RAC (Count IV);
   d. Promissory estoppel against QIHI, RAC, Newstar and Realpulse (Count V);
   e. Defamation against Realpulse (Count VI);
   f. Violation of the Illinois Wage Payment and Collection Act against Newstar and Realpulse (Count VII); and
   g. Conversion against Realpulse (Count VIII).

3. Defendants' Motion to Dismiss the arbitrable claims is GRANTED without prejudice.

4. To the extent that Defendants move to compel arbitration of the claims against Apps and Tucker, that motion is DENIED.

5. Defendants' Motion to Dismiss all of the non-arbitrable claims for lack of subject matter jurisdiction is GRANTED without prejudice.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 14, 2000